NEW YORK LIFE INSURANCE & TRUST CO. v. VIELE et al.

(Supreme Court, Appellate Division, First Department.   November 12, 1897.)

WILLS—CONSTRUCTION—DESCRIPTION OF DEVISEES

G., who had resided in America, but in 1855 had settled in Saxony, where her married daughter E. was living, executed her will, in 1878, in which she provided that as to one portion of her estate it should, upon the death of E., pass to E.'s "then living lawful issue," if any; otherwise to the grandchildren of G.   E. was then 40 years of age, and had no living issue; but in 1873 E. and her husband had, under the laws of Saxony, legally adopted appellant, who, after the death of E., claimed under the will as E.'s "lawful issue."   *Held*, that it was not the intention of G., in using that term, to include the adopted child.

Appeal from trial term.

Action by the New York Life Insurance & Trust Company under the will of Mary Griffin, deceased, against Teresa Viele and others. From a judgment entered on decision of the court, Olga Felicitas Heinicke and others appeal.   Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Chas. E. Hughes, for appellants.

R. E. Robinson, for respondent New York Life Insurance & Trust Co.

Severyn B. Sharpe, for respondents Kathlyne K. Viele and others.

J. Warren Greene, for respondents Griffin and others.

INGRAHAM, J.   The question presented upon this appeal depends upon the construction of the third clause of the will of Mary Griffin, who died at Dresden, Saxony, on the 9th day of March, 1888. After making several specific bequests in the first clause of the will, by the second clause the testatrix gives all the residue of her estate to her executors in trust; and by the third clause the executors are directed to invest one-third part of the residuary estate, and to apply the net income derived therefrom to the use of her daughter Emily S. Lengnick during her life, and upon her decease she directed "that the principal of such share be paid over or transferred by my executors to her then living lawful issue, if any; and if she leaves, her surviving, no such issue, I direct that the same be then added in equal parts or proportions to the principal of the several shares of my residuary estate hereinafter directed to be held in trust for my ten grandchildren hereinafter named."   This will was executed Au-

gust 6, 1878. At that time the testatrix was residing at Dresden, in the kingdom of Saxony, and had resided there for many years. Her daughter Emily was married to a citizen of Saxony. Mrs. Lengnick had had two children, both of whom had died in 1872, and from the evidence it appears that at the time the will was executed she was in poor health, and had given up the hopes of having other children. She was, however, then about 40 years of age, and was living with her husband at Dresden. The testatrix went to Dresden in the year 1855, and resided there continuously until her death, March 9, 1888. During that period she visited New York only once, some time prior to 1865, and then remained in America but a few months. The testatrix's daughter Emily continued to reside at Dresden until her death, in 1893, having had no children except the two who had died in the year 1872. It also appears that, in the year 1873, Mrs. Lengnick and her husband adopted, under the law of the kingdom of Saxony, a niece of her husband, who is the appellant Olga Felicitas Heinicke. She seems to have been legally adopted under the provisions of the Saxony law, pursuant to a royal decree dated April 13, 1876, and she lived with the Heinicke family until her marriage, in 1891; and she insists upon this appeal that, as an adopted daughter of Mrs. Lengnick, she is the "lawful issue" of Mrs. Lengnick, and as such entitled to the trust estate that was created by the third clause of the will. At the time of the execution of the will the testatrix's daughter Emily was then but 40 years of age, and it cannot be said that there was no possibility of her having children in the future. There is nothing in the will itself, or in the situation of the parties at the time of the execution of the will, that would justify the court in assuming that this testatrix intended to give to the words "living lawful issue" any other meaning than their primary legal meaning, viz. that of children or their descendants, and nothing from which an inference could be drawn that the testatrix intended to include within the class thus specified any person but the actual offspring of her daughter or their descendants. It is true that at the time of the execution of the will Mrs. Lengnick and her husband had adopted this child, and that by that adoption, under the law of Saxony, the child had acquired a certain legal status, with certain defined legal rights; but such an adoption did not by the law of Saxony give to such adopted child all the rights of a child born of the body of the persons who had adopted her, nor would she be included within the legal definition of the term "lawful issue." The contract of adoption was introduced in evidence, and by it Maj. Lengnick and his wife take this child Olga Felicitas Lengnick "as their child, with all the rights which, according to section 1787 of the Civil Code of the Kingdom of Saxony, lawfully belonging to those who are adopted, where no different provisions are contained in the contract of adoption." By this section of the Saxony Civil Code it is provided that "the reciprocal legal relationship between an adopted child and the adopting party is the same as that between a child of the marriage and its parents, in so far as it is not otherwise provided in the contract of adoption." The relationship here provided for is that between the adopted child and the adopting party that

relationship is reciprocal.  The duty of the adopting party is that of a parent, and the duty of the adopted child towards the adopting party is that of a child of a marriage to its parents.  This section gives to the child no right as to others not the adopting parties; and, where the Code speaks of the right of an adopted child to inherit (section 2044, Civ. Code), it is provided that "adopted children inherit from the adopting party the same as children of marriage, unless otherwise provided in the contract of adoption."  Thus no right is given to an adopted child by the Code to inherit from others than the parties who have adopted the child.  This limitation would seem to have an important bearing.  Thus, parents adopting a child could assume a relationship to the adopted child, and by their voluntary act such adopted child acquires a right to inherit their property; but it would be a much more extensive right to bestow upon an adopted child the right not only to inherit from the adopting parties property which belonged to them, but also the right to inherit property belonging to the family of the adopting parties, who had no voice in the adoption of the child, and thus bring in a person to inherit their property who was not of their blood, and in whom it was possible they had no interest.  The will itself is careful to give to the testatrix's daughter Emily no power to dispose of this estate.  Under the will she has only the right to receive the income during her life; and while the testatrix evidently wished that this property should go to her children, if she left any surviving her, in the event that she left no child surviving the property is disposed of in such a way as to show that the testatrix intended that it should go to her own grandchildren rather than to her daughter Emily's husband, or others not connected with her own family.  At the time the will was executed her daughter Emily had adopted this child, and the testatrix had knowledge of that fact.  If she had intended that this adopted child should be entitled to her daughter Emily's share upon Emily's death, she certainly would not have left it to depend upon an unusual meaning to be given to the words "lawful issue," but would have used language expressive of that intention; and this is rendered much more certain by the fact that, when she comes to speak of her own grandchildren in the fourth and fifth clauses of the will, she carefully enumerates them by name, so that there could be no mistake as to the individuals whom she intended as the objects of her bounty.  The children of her other daughter and her son she expressly names, although at the time her daughter Teresa was alive.  When she makes a provision for the issue or children of her daughter Emily she does not specify them by name, but speaks of them simply as her daughter Emily's dying without leaving living lawful issue; and the reason of that is quite apparent,—that is, that her daughter Emily had no living lawful issue at the time of the making of the will whom she could name, and the provision was inserted solely to apply to the contingency of her daughter Emily's subsequently having issue.  That this was the intention of the testatrix is much strengthened by the sixth clause of the will.  She there expressly directs that, if her daughter Emily dies before her, the share held for her shall go directly to her own grandchildren.  There

is here no reservation for issue, and it can hardly be supposed that
the testatrix intended that if Emily died before her the adopted
daughter should not take, but that if she outlived her the adopted
daughter should take.   We have come to the conclusion, therefore,
in construing this will, giving to the language used ordinary legal
significance, considering all of the other provisions in the will, and
the circumstances surrounding the testatrix at the time of the mak-
ing of the will, that it was not the intention of the testatrix to in-
clude within the words "living lawful issue" of her daughter Emily
the adopted child of her daughter and her husband.

There was some evidence below as to the law of the kingdom of
Saxony; and a gentleman who had received a legal education in
Saxony, and who had practiced law there, testified that in his opinion
the courts of Saxony would include an adopted child within a descrip-
tion of living lawful issue of adopted parents.   This will, however,
was written in English, was prepared for her, and related almost ex-
clusively to property within this jurisdiction; and, although the de-
ceased may be said to have been domiciled in Saxony at the time of
her death, I think we should give the construction to this will that
would be given to a will intended to convey property here or transfer
property here in accordance with our law.   But assuming that the
will is to be construed according to the law of Saxony, and giving due
weight to the opinion of the gentleman who testified as to that law,
we think that testimony would have but little weight in determining
the construction to be given to the Civil Code of Saxony.   The witness
expressly testified that, so far as he knew, the question had never been
presented to a Saxony tribunal, nor did he know of any adjudication
there that was authority for his construction of the Saxony Code.
He bases his opinion solely upon the language used in the Code, and
not upon any construction given to the Code by any Saxony authority.
When we come to construe a written Code, and where there is no light
that can be thrown upon the construction to be given to such Code by
the adjudications of the courts of the sovereignty establishing the
Code,—no evidence that the question presented has ever been dis-
cussed or adjudicated upon in such sovereignty,—the meaning to be
given to the words used is to be determined by the court whose duty it
is to pass upon the question.   Here, however, we have to construe, not
so much the meaning of the Saxony Code, as the intention of this tes-
tatrix in making the will in question.   Her intention must be ascer-
tained from the words used in the will, considering the circumstances
surrounding the testatrix and the objects of her bounty at the time of
the making of the will; and in ascertaining that intention it is, we
think, immaterial as to what construction the Saxony court would give
to this will.   What we have to do is to ascertain what disposition this
testatrix intended should be made of this share of her estate after the
death of her daughter Emily; and, considering all the language used
in the will and the surrounding circumstances, we think it is clear
that the testatrix did not intend that this share of her estate given to
her daughter Emily for life should, upon her death, go to this adopted
child rather than to her own grandchildren, for whom she was so par-
ticular to make the most explicit direction as to their ultimately be-

coming the owners of all of her property upon the contingency of her daughter Emily's dying without leaving children. To hold otherwise would result in giving to this adopted child, who was no relation of hers, and upon whom she has not shown any express intention so to confer, a much larger portion of her estate than is given to any one of her own grandchildren; and we certainly do not think that we would be justified in adopting such a conclusion in the absence of an intention thus declared. In coming to this conclusion we have not discussed the cases cited by counsel for the appellants in which a construction of the word "issue" has been held to include adopted children. We have examined these cases, but, even if we were disposed to follow them, we do not think any of them apply to this case. In the case of Hartwell v. Tefft, 35 Atl. 882, where the supreme court of Rhode Island discussed the question, the decision is based upon the statute of that state which gives to an adopted child "the status of a descendant and all the legal consequences and incidents thereof the same as though he were born in lawful wedlock." But here the Code of Saxony does not give to an adopted child such a status. It gives to the child the right to inherit from its adopting parents the same as the child of the marriage, and provides that the reciprocal legal relationship between the adopted child and the adopting party is the same as that between a child of marriage and its parents; but this is quite different from giving to him the status of a descendant and all the legal consequences and incidents thereof, the same as though he were born in lawful wedlock. We would say the same of the other cases cited. They all had been put upon the wording of some statute giving to the adopted child the defined legal status that would include the child within the term used in the will or other instrument creating the estate. Here we have to ascertain the intention of this testatrix when she executed this instrument, and not just what relationship existed between the adopted child and its parents.

We think, therefore, that the judgment appealed from was right, and it is affirmed, with costs to the respondents to be paid out of the estate. All concur.